## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GERONIMO FRATICELLI ROSADO, JR., :     Civil No. 3:18-cv-0601
                                   :
             Plaintiff             :     (Judge Mariani)
                                   :
       v.                          :
                                   :
RUSSELL JO. BELL, *et al.*,        :
                                   :
             Defendants            :

### MEMORANDUM

## I.   Background

Plaintiff Geronimo Fraticelli Rosado, Jr.("Rosado") initiated this civil rights action

pursuant to 42 U.S.C. § 1983 in the United States District Court for the Western District of

Pennsylvania on July 31, 2017, setting forth various claims against Pennsylvania

Department of Corrections ("DOC") officials and individuals performing work at the State

Correctional Institutions at Dallas ("SCI-Dallas") and Camp Hill ("SCI-Camp Hill").  (Docs. 1,

3).  The matter was transferred to this Court on March 15, 2018.

After two failed attempts to amend the complaint (Docs. 59, 64), in October 2019,

the Court partially accepted for filing Rosado's third proposed amended complaint.  (Doc.

66).  Specifically, the Court accepted claims one, three, four and those portions of claim

seven pertaining to Defendants John E. Wetzel ("Wetzel"), Lawrence Mahally ("Mahally"),

Stanley Stanish ("Stanish"), Loretta DeBoer ("DeBoer"), and Michael Havrilla ("Havrilla").[1] (Docs. 68, 69).

Pending are motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed on behalf of Wetzel and Mahally (Doc. 75), and Stanish and DeBoer (Doc. 73).[2]  The motions are ripe for disposition and, for the reasons set forth below, Wetzel and Mahally's motion will be granted and Stanish and DeBoer's motion will be granted in part and denied in part.

## II.    Legal Standards

A complaint must be dismissed under FED. R. CIV P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570  (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

"Though a complaint 'does not need detailed factual allegations, ... a formulaic recitation of the elements of a cause of action will not do.... *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

---

[1]    The Court struck claims two, five, six, and the portions of claim seven that did not relate to Defendants Wetzel, Mahally, Stanish, DeBoer, and Havrilla.  (Doc. 68).

[2]    Defendant Havrilla has not yet been served..

(internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but ... disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F .3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

Twombly and Iqbal require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] -that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).  "[E]ven when

plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it,

unless the district court finds that amendment would be inequitable or futile, the court must

inform the plaintiff that he or she has leave to amend the complaint within a set period of

time.  *Id.*

## III.    Rosado's Third Amended Complaint

In a section titled "Rule 8.(a) Plain Statement of Claim for Relief" Rosado sets forth

the factual basis for his claims.  (Doc. 69, pp. 3-6).  He alleges that on July 28, 2016, after

serving a maximum state prison sentence in the custody of the DOC, he was released from

SCI-Dallas.  (*Id.* at p. 3, ¶ 1).  On November 11, 2016, during the course of a Social Security

disability independent medical evaluation, he was deemed legally blind.  (*Id.* at p. 3, ¶¶ 3,

4).  Social Security allegedly granted his disability claim on September 17, 2017.  (*Id.* at p.

3, ¶ 5).

He alleges that while incarcerated at SCI-Dallas, Defendants Stanish, DeBoer, and

Mahally discriminated against him based on his visual impairment, provided him inadequate

medical care, and engaged in kick back schemes, and made illegal referrals, and false

reports.[3]  (*Id.* at pp. 3, 4, ¶¶ 6-8).  He also alleges that these Defendants acted in concert

with Defendant Wetzel to deny his grievances and complaints and that they are operating

under inadequate policies and procedures with malice and insufficient "safeguards of due

---

[3]  Throughout his pleading, Rosado refers to Defendant DeBoer as "Loretta."

process under the Fourteenth Amendment." (*Id.* at p. 4, ¶¶ 9, 10). Further, he alleges that Wetzel, together with Defendant Mahally, "are to assure such policies and procedures are substantially consistent and adequate with law, and to assure due process under the Fourteenth Amendment, not violated." (*Id.* at p. 4, ¶ 12).

He alleges that Defendant Wetzel's policies and procedures violated constitutional rights either through "misrepresentation of policies, or failure [to] supervise employees, and or policies and procedures wholly inadequate on its face." (*Id.* at p. 4, ¶¶ 12-14). He states that "ultimately, Defendants Wetzel and Superintendent Mahally are legally responsible for the overall operations of S.C.I. Dallas, and subsequently by failing to supervise employees, and exercise due diligence of both law and due process of law, under the Fourteenth Amendment." (*Id.* at p. 4, ¶ 15). He further alleges that they violated the Fourteenth Amendment by failing to investigate grievances and complaints which resulted in an inadequate medical care system. (*Id.* at p. 4, ¶ 16). He asserts that "[d]ue to Defendants Wetzel and Mahally [sic] outrageous negligence and deliberate indifference caused Defendants Dr. Stanish and PA. DeBoer to intentionally cause Mr. Rosado physical injuries in violation of the Fourteenth Amendment." (*Id.* at p. 4, ¶ 17). He also alleges that Defendants Wetzel and Mahally were deliberately indifferent and intentionally denied and delayed access to medical care and that Defendants Stanish and DeBoer "subjectively perceived a risk of harm and then disregarded it." (*Id.* at p. 5, ¶¶ 22-27).

In the next section, "Rule 8(a) Sufficient Notice of Claims and Injuries," he contends

5

that on May 16, 2013, he submitted an inmate request to be seen by an optometrist.[4]  He

avers that the optometrist informed him that he was not able to correct Rosado's visual

impairment.  He therefore referred him to Dr. Havrilla in Kingston, Pennsylvania.[5] (*Id.* at p.

6, ¶¶ 33-35).

He was seen by Dr. Havrilla on December 20, 2013.  However, the doctor was

unable to treat him because Defendants Stanish and DeBoer failed to send his medical

chart or any documentation.  (*Id.* at pp. 6, 7,  ¶¶ 36-38).  He further alleges that Dr. Havrilla

spoke with Defendant Stanish during that visit and reported that Rosado's "condition is

serious, he has no corrective process to left eye, and requires a corneal graft, his right eye

cataract surgery."  (*Id.* at p. 7, ¶ 39).  The doctor then allegedly stated "Mr. Rosado I don't

understand what you want me to do for you, your left eye needs a corneal graft, your right

eye cataract surgery, and highly recommend, I cannot issue you glasses."  (*Id.* at p. 7, ¶

42).  Dr. Havrilla then allegedly denied Rosado's request for a recommendation for

placement in a therapeutic community indicating that he no authority to do so.  (*Id.* at p. 7,

¶¶ 40-42).  Rosado alleges that Stanish concluded on this date that he would "not be

providing any medical expenses for surgery...."  (*Id.* at p. 11, ¶ 89).

He alleges that on or about January 4, 2014, he submitted a sick call request

seeking "an alternative program" and Restasis.  (*Id.* at p. 7, ¶ 43).  He was seen by

---

[4]  Based on the chronology of events, this request had to have been made in May of 2013, not 2014.

[5]  Rosado has notified the Court that he initially misidentified Dr. Habrilla. His correct name is Dr. Havrilla.

6

Defendant DeBoer who allegedly informed him that there was no record of him seeing Dr. Havrilla and denied his request for Restasis. (*Id.* at p. 7, ¶ 45). He also states that Defendant Stanish "operated as fraud to reverse a professional medical opinion." (*Id.* at p. 8, ¶ 50). He further alleges that DeBoer and Stanish denied him an opportunity to be eligible for parole. (*Id.* at p. 8, ¶ 51).

On July 20, 2014, he allegedly submitted a sick call request due to a recurrence of an infection and rash near his right eye due to the corneal graft. (*Id.* at p. 8, ¶ 56). Defendant DeBoer provided him with a generic form of Restasis, which he contends complicated "both the eye and the infection." (*Id.* at p. 8, ¶ 58). He alleges that during the course of the examination, Defendant DeBoer engaged in inappropriate and provocative sexual conduct. DeBoer then stormed out of the exam room and returned with Defendant Stanish who allegedly berated him. (*Id.* at p. 9, ¶¶ 63-65). He alleges he submitted a grievance but Defendant Mahally denied the grievance without investigation or recourse. (*Id.* at p. 9, ¶ 66).

On August 18, 2014, Rosado alleges he was again transported to Dr. Havrilla's office at the direction of Defendant Stanish for the purpose of an eyeglass prescription. (*Id.* at p. 10, ¶ 78). Rosado questioned the eyeglass prescription based on Dr. Havrilla's previous representation that eyeglasses would only impair his vision. (*Id.* at p. 10, ¶ 79). A telephonic conversation then took place between Stanish and Havrilla during which Rosado asserts they agreed to provide him inadequate medical care and agreed upon a false

diagnosis. (*Id.* at p. 11, ¶¶ 80-84). He left Dr. Havrilla's office with an eyeglass prescription for tinted glasses so as to avoid sunlight and irritation, and a recommendation that he receive surgery on both eyes. (*Id.* at p. 11, ¶ 90). Rosado asserts that he was accused of refusing the glasses. (*Id.* at pp. 11, 12, ¶¶ 91, 92).

On August 6, 2015, he submitted a sick call request to have his neck examined, which he alleges was not answered for two days. (*Id.* at p. 12, ¶¶ 93, 94). Defendant DeBoer told him there was nothing wrong with him and threatened him for seeking medical attention; a different nurse then evaluated him and prescribed him a ten-day regiment of muscle relaxers and pain relievers. (*Id.* at p. 12, ¶¶ 95-97).

On November 17, 2015, he sought treatment for the recurring rash and pain and Defendant DeBoer told him he had no infection and did not treat his ailment. (*Id.* at p. 13, ¶¶ 100-101). He asserts that the rash went untreated for months. (*Id.* at p. 13, ¶ 101). He was eventually seen by the optometrist. He expected to have the recurring rash and pain addressed. The optometrist informed him that he was there for an eyeglass prescription, not for treatment of an infection. (*Id.* at p. 13, ¶¶ 102-1-4). The infection allegedly spread and Defendant DeBoer continued to inform him that there was no infection and threatened that she would issue him a misconduct. (*Id.* at p. 13, ¶¶ 105, 106). He attempted to get relief *via* by voicing complaints and through the inmate grievance system, but Defendant Mahally offered no relief and failed to ether investigate or supervise his employees, causing him unnecessary pain and suffering. (*Id.* at p. 13, ¶¶ 107-109).

He alleges he was again mistreated on January 6, 2016. (*Id*. at p. 14, ¶¶ 110, 111). He asserts that he was leaving sick call after again being denied treatment and that "Ms. White" took his information and had him seen by a new nurse, who diagnosed him with an eye infection. (*Id.* at p. 16, ¶ 132).

Paragraphs 114 through 119, 121-123, and 126, contain a summary of the above events. He then identifies causes of action. (*Id.* at pp. 14, 15). In claim one he alleges that Defendants Wetzel, Mahally, Stanish and DeBoer, in contravention of the Eighth and Fourteenth Amendments, violated various DOC medical policies and procedures and violated the grievance system. (*Id.* at p. 16). In claim three, he alleges Defendants Mahally, Stanish, DeBoer, and Havrilla were deliberately indifferent and provided inadequate medical treatment for his visual impairment in violation of the Eighth and Fourteenth Amendments. (*Id.* at pp. 19-21). In claim four he avers that Defendants Mahally, Stanish, and DeBoer were deliberately indifferent and provided inadequate medical treatment for his eye rash in violation of the Eighth and Fourteenth Amendments. (*Id.* at pp. 21, 22). Claim seven contains requests for compensatory and punitive damages and attorney fees. (*Id.* at 24-, 27).

## IV.   Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.; see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002*); Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under §1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.    Defendants Wetzel and Mahally

In claims one, three, and four, Rosado alleges that Defendant Wetzel, the Secretary of the DOC, and Defendant Mahally, the Superintendent at SCI-Dallas violated his Eighth and Fourteenth Amendment rights. Defendants seek to dismiss these claims based on a lack of personal involvement. Individual liability will be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). Liability "cannot be predicated solely on the operation of *respondeat superior*." *Id.* In other words, defendants in Section 1983 civil rights actions "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence." *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 1207-08. A plaintiff must establish the particulars of

10

conduct, time, place, and the person responsible.  *Evancho*, 423 F.3d at 354; *Rode*, 845

F.2d at 1207-08.  When a plaintiff merely hypothesizes that an individual defendant may

have had knowledge of, or personal involvement in, the deprivation of his or her rights,

individual liability will not follow.  *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08.

It is clear from Rosado's third amended complaint that he is primarily seeking to

impose liability on Defendants Wetzel and Mahally based on their supervisory roles.

"[T]here are two theories of supervisory liability, one under which supervisors can be liable if

they established and maintained a policy, practice or custom which directly caused the

constitutional harm, and another under which they can be liable if they participated in

violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had

knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster*

*Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted).

1.      Fourteenth Amendment

Rosado alleges that Defendant Wetzel's grievance policies are insufficient to

safeguard against Fourteenth Amendment Due Process violations and that Wetzel, together

with Defendant Mahally, "are to assure such policies and procedures are substantially

consistent and adequate with law, and to assure due process under the Fourteenth

Amendment, [is] not violated."  (Doc. 69, p. 4, ¶¶ 9-12).  He also alleges that Defendant

Wetzel's policies and procedures violated constitutional rights either through

11

"misrepresentation of policies, or failure [to] supervise employees, and or policies and procedures wholly inadequate on its face."  (*Id.* at p.4, ¶ 14).

Courts recognize that liability under § 1983 may be imposed on an official with final policymaking authority if that official establishes an unconstitutional policy that, when implemented, injures a plaintiff. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir.1989). However, to establish a claim against a policymaker under § 1983 a plaintiff must allege and prove that the official established or enforced policies and practices directly causing the constitutional violation. *Id.* at 1114 ("Thus, when a policymaking official establishes a constitutionally inadequate state procedure for depriving people of a protected interest and someone is thereafter deprived of such an interest, the official has 'subjected' that person to a due process violation."); *see also Berlanti v. Bodman*, 780 F.2d 296, 300–01 (3d Cir. 1985).

Although prisoners have a constitutional right to seek redress of grievances as part of their right of access to courts, this right is not compromised by the failure of prison officials to address these grievances. *Booth v. King*, 346 F.Supp.2d 751, 761 (E.D.Pa. 2004). This is because "inmates do not have a constitutionally protected right to a prison grievance system." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977) (Burger, J., concurring).  Nor does the existence of a grievance procedure confer prison inmates with any substantive constitutional rights. *Hoover v. Watson*, 886 F.Supp. 410, 418–419 (D.Del.), aff'd 74 F.3d 1226 (3d Cir.1995). Moreover, "[t]he failure of

a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Gordon v. Vaughn*, 1999 WL 305240, at \*2, (E.D.Pa. May 12, 1999) (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir.1994)). Therefore, " '[i]f the state elects to provide a grievance mechanism, violations of its procedures do not...give rise to a 1983 claim.' " *Hoover*, 886 F.Supp. at 418–19 (quoting *Spencer v. Moore*, 638 F.Supp. 315, 316 (E.D.Mo.1986)).  Supervisory liability cannot be imposed upon either Wetzel of Mahally based on Rosado's allegations that the administration of the grievance procedure and policies is unconstitutional.

With regard to the second theory, a plaintiff must show that each defendant personally participated in the alleged constitutional violation or approved of it. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005); *see also Iqbal*, 556 U.S. at 677 (finding that in a § 1983 suit, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct").  "Access to prison grievance procedures is not a constitutionally-mandated right, and allegations of improprieties in the handling of grievances do not state a cognizable claim under [section] 1983." *Glenn v. DelBalso*, 599 F. App'x 457, 459 (3d Cir. 2015); *see Booth*, 346 F. Supp. 2d at 761 (finding that "[p]risoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create a liberty interest requiring procedural protections under the Fourteenth Amendment."); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (affirming that "[i]nmates do not have a constitutionally protected right to the prison

grievance process."). The "after-the-fact" review of a grievance, or an inmate's

dissatisfaction with the grievance response, does not establish the involvement of officials

and administrators in any underlying constitutional deprivation. *See Rode*, 845 F.2d at 1207

(finding where a defendant, after being informed of the violation through the filing of

grievances, reports or appeals, failed to take action to remedy the alleged wrong is not

enough to show that the defendant has the necessary personal involvement); *Pressley v.

Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) (not precedential) ("The District Court properly

dismissed these defendants and any additional defendants who were sued based on their

failure to take corrective action when grievances or investigations were referred to them.");

*Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (not precedential) (holding that

allegations that prison officials responded inappropriately to inmate's later-filed grievances

do not establish the involvement of those officials and administrators in the underlying

constitutional deprivation). The roles of Wetzel and Mahally in adjudicating Rosado's

grievances do not constitute personal involvement and, as such, are insufficient to establish

supervisory liability.

### 2.    Eighth Amendment

With respect to the Eighth Amendment inadequate medical care claims, if a prisoner

is under the care of medical experts, as is the case here, "a non-medical prison official will

generally be justified in believing that the prisoner is in capable hands. This follows naturally

from the division of labor within a prison. Inmate health and safety is promoted by dividing

responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly…absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official…will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).  The complaint is devoid of the particulars of conduct, time, and place, and fails to allege personal direction or actual knowledge and acquiescence on the part of either defendant in the alleged inadequate medical treatment.  *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08. Rather, it is clear that any knowledge of Rosado's medical issues garnered by Wetzel or Mahally is limited to their consideration and disposition of his grievances and complaints.

### 3. Conclusion

Rosado cannot maintain constitutional claims based upon inadequate grievance policies and procedures, or that grievances concerning inadequate medical care and treatment were denied, mishandled, or not addressed.  Nor does he set forth sufficient allegations to hold these Defendants liable for his alleged inadequate medical treatment. Consequently, the Eighth and Fourteenth Amendment claims against these Defendants, set

forth in claim one (Wetzel and Mahally), claim three (Mahally), claim four (Mahally), and the damages claims contained in claim seven (Wetzel and Mahally) will be dismissed.

**B.   Defendants Stanish and DeBoer**

1.   Eighth Amendment

Rosado alleges that Defendants Stanish and DeBoer were deliberately indifferent to his serious medical needs.  For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).  A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Defendants contend that the medical condition of which Rosado complains is not serious and that they were not deliberately indifferent.  We disagree.  Rosado sets forth clear allegations in the third and fourth claims that Defendants Standish and DeBoer were deliberately indifferent to his serious medical needs.  Defendants' motion to dismiss will be denied as to this claim.

2.   Negligence

Defendants seek to dismiss the negligence claims based on Rosado's failure to file a

Certificate of Merit as required by PA. R. CIV. P. 1042.3.  Under Pennsylvania law, a plaintiff

asserting a claim "based upon an allegation that a licensed professional deviated from an

acceptable professional standard" must file a certificate of merit within sixty days of filing the

complaint. PA. R. CIV. P. 1042.3(a). The certificate requires that a licensed professional has

given a written statement that the claim is potentially meritorious. PA. R. CIV. P.

1042.3(a)(1).  Although the rule appears to be procedural, the requirement is substantive

and therefore applies in federal court.  *Booker v. United States*, 366 F. App'x 425, 426 (3d

Cir. 2010).

Ordinarily, the failure to timely file a certificate of merit warrants dismissal of a

medical malpractice claim. *Womer v. Hilliker*, 908 A.2d 269, 275-76 (Pa. 2006). In rare

circumstances, however, a plaintiff who makes a "procedural misstep" in failing to timely file

a certificate of merit may seek to have his failure excused if he "substantial[ly] compl[ied]"

with the Rule's requirements. *Id.* (citing PA R. CIV. P. 126  which states that "[t]he court ...

may disregard any error or defect of procedure which does not affect the substantial rights

of the parties.'); *Booker*, 366 F. App'x at 428-29. Under those narrow circumstances, in

order to have his failure excused, a plaintiff must show more than just a lack of prejudice to

the opposing party: he must show that he had a "reasonable explanation or legitimate

excuse" for missing the strict deadline set forth in the rule. *Stroud v. Abington Mem'l Hosp.*, 546 F. Supp. 2d 238, 252-53 (E.D. Pa. 2008).

Rosado has filed three documents with exhibits, including medical records, that he identifies as Certificates of Merit.  (Docs. 30, 84, 85). However, none comply with the Pennsylvania Rules of Civil Procedure in that they do not contain a written statement by a licensed professional that the claim he seeks to pursue is potentially meritorious. Nonetheless, because Rosado is proceeding *pro se*, and because a reading of his most recent filings (Docs. 84, 85), indicates that he fails to understand that the Certificate of Merit requires the statement of a licensed professional, we conclude that dismissal of the negligence claims for failure to comply with the time constraints of the Rule, without affording him the opportunity to file a proper Certificate of Merit, would be unduly harsh. Accordingly, we will deny the motion to dismiss without prejudice to Defendants' right to again seek dismissal of the negligence claims if Rosado fails to satisfy the Certificate of Merit requirement in the time period set forth in the Order below.

### 3.    Due Process

Rosado also asserts that these Defendants violated his Fourteenth Amendment Due Process rights.  These claims will be summarily dismissed.  Rosado's invocation of the Fourteenth Amendment is less than clear.  To the extent that he is attempting to impose Fourteenth Amendment liability on these defendants based on the handling of complaints and grievances, as noted *supra*, there is no constitutional right to a grievance procedure.

And, inasmuch as he seeks to bring his inadequate medical care claims under the

Fourteenth Amendment, it is the Eighth Amendment that prohibits the infliction of cruel and

unusual punishment upon prisoner "after [the State] has secured a formal adjudication of

guilt in accordance with due process of law." *City of Revere v. Massachusetts Gen. Hosp.*,

463 U.S. 239, 244 (1983) (quoting *Ingraham v. Wright*, 430 U.S. 651, 671–72 n. 40, 97

S.Ct. 1401, 51 L.Ed.2d 711 (1977))." *Natale*, 318 F.3d at 581.  The Fourteenth Amendment

affords these protections only in the context of pretrial detainees.  *Id.*  There is no question

that Rosado was serving a state sentence while housed at SCI-Dallas.  Consequently, the

Eighth Amendment, not the Fourteenth Amendment, governs his inadequate medical care

claims.

> 4.    Retaliation

Defendants also seek to dismiss any allegations suggesting that Defendants

engaged in retaliatory conduct.  The First Amendment offers protection for a wide variety of

expressive activities.  *See* U.S. Const. amend I.  These rights are lessened, but not

extinguished in the prison context, where legitimate penological interests must be

considered in assessing the constitutionality of official conduct.  *See Turner v. Safley*, 482

U.S. 78, 89 (1987).  Retaliation for expressive activities can infringe upon an individual's

rights under the First Amendment.  *See Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir.

2000).

To prevail on a retaliation claim, Rosado bears the burden of demonstrating three elements. First, he must prove that he was engaged in a constitutionally protected activity. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, a he must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.* (quoting *Allah*, 229 F.3d at 225). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)). Significantly, the effect of the adverse action must be more than *de minimis*. *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). Third, he is required to show that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision" to take action against him. *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense.' " *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). If the prison officials can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

Rosado fails to allege in claim one, three, four or seven of his third amended complaint that Defendants violated his First Amendment rights and the complaint is devoid of allegations that can be construed as an infringement on expressive activities. Defendants' motion to dismiss the retaliation claim will be granted.

### 5.   Conclusion

Defendant Stanish and DeBoer's motion to dismiss the Eighth Amendment inadequate medical care claims and the negligence claims will be denied (claims three and four).  The motion will be granted with respect to the Fourteenth (claims one, three, and four) and First Amendment Claims.

## V.   Leave to Amend

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant a plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.,* 293 F.3d 103, 114 (3rd Cir. 2002).  The Court concludes that granting Rosado leave to amend those claims which have been dismissed would be futile as they simply do not rise to the level of constitutional violations.

## VI.   Conclusion

Based on the foregoing discussion, Defendants Wetzel and Mahally's motion (Doc. 75) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) will be granted.

Defendants Stanish and DeBoer's Rule 12(b)(6) motion (Doc. 73) to dismiss will be granted

in part and denied in part.

A separate Order shall issue.

Dated: September __/8__, 2020

Robert D. Mariani
United States District Judge