# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERONIMO FRATICELLI ROSADO, Jr., | : | Civil No. 3:18-cv-0601 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| RUSSELL JO. BELL, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

### I. Background

Plaintiff Geronimo Fraticelli Rosado, Jr.("Rosado") initiated this action in the United States District Court for the Western District of Pennsylvania on July 31, 2017, setting forth various claims against Pennsylvania Department of Corrections ("DOC") officials and individuals performing work at the State Correctional Institutions at Dallas ("SCI-Dallas") and Camp Hill ("SCI-Camp Hill"). (Docs. 1, 3). The matter was transferred to this Court on March 15, 2018. The matter is proceeding *via* a Third Amended Complaint. (Doc. 69).

Presently pending are the following motions: motions to dismiss pursuant Rule 12(b)(6) of the Federal Rule of Civil Procedure filed by Defendants Stanish and DeBoer (Doc. 115) and Defendant Havrilla (Doc. 125); Rosado's "motion to clear any misconception in support files undisputed facts against Dr. Havrilla" (Doc. 129); and Defendant Havrilla's motion to strike Rosado's "motion to clear any misconception in support files undisputed

facts against Dr. Havrilla." (Doc. 128). The motions are presently ripe for disposition. (Docs. 116, 120-122, 124, 126, 127, 130-132). For the reasons set forth below, the motions to dismiss and the motion to strike will be granted and the "motion to clear any misconception in support files undisputed facts against Dr. Havrilla" will be stricken.

## II. Motion to Strike and "Motion to Clear Any Misconception in Support Files Undisputed Facts Against Dr. Havrilla"

In seeking to strike Rosado's "motion to clear any misconception in support files undisputed facts against Dr. Havrilla", Defendant Havrilla argues that it constitutes an impermissible attempt to amend the Third Amended Complaint and to reintroduce claims previously stricken by the Court. (Doc. 128, p. 2, ¶ 6). He also asserts that it alleges facts outside the pleading, contains disputed facts, and is a duplicative response to his motion to dismiss. (*Id.* at pp. 2-3 ¶¶ 6-10).

Rosado's motion is replete with statements of "undisputed facts" and he notes in his reply brief that the document falls within the parameters of Rule 56. (Doc. 132, p. 1). This document is more appropriately submitted in opposition to a motion for summary judgment, not a motion to dismiss. Defendant Havrilla seeks to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12 and the motion can be decided without considering matters outside the pleadings and without converting the motion to one for summary judgment. Consequently, the Court will grant Defendant Havrilla's motion and strike the document as there is no motion for summary judgment pending.

2

### III. Motions to Dismiss

#### A. Legal Standards

A complaint must be dismissed under FED. R. CIV P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

"Though a complaint 'does not need detailed factual allegations, ... a formulaic recitation of the elements of a cause of action will not do.... *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but ... disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F .3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

*Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a

plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] -that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). "[E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time. *Id.*

### B. Pertinent Portions of Rosado's Third Amended Complaint

In section, "Rule 8(a) Sufficient Notice of Claims and Injuries," Rosado contends that

on May 16, 2013, he submitted an inmate request to be seen by an optometrist.[1] He avers that the optometrist informed him that he was not able to correct Rosado's visual impairment and referred him to Dr. Havrilla in Kingston, Pennsylvania. (Doc. 69, p. 6, ¶¶ 33-35).

He was seen by Dr. Havrilla on December 20, 2013. However, the doctor was unable to treat him because Defendants Stanish and DeBoer allegedly failed to send his medical chart or any documentation. (*Id.* at pp. 6, 7, ¶¶ 36-38). He further alleges that Dr. Havrilla spoke with Defendant Stanish during that visit and reported that Rosado's "condition is serious, he has no corrective process to left eye, and requires a corneal graft, his right eye cataract surgery." (*Id.* at p. 7, ¶ 39). The doctor then allegedly stated "Mr. Rosado I don't understand what you want me to do for you, your left eye needs a corneal graft, your right eye cataract surgery, and highly recommend, I cannot issue you glasses." (*Id.* at p. 7, ¶ 42). Dr. Havrilla then allegedly denied Rosado's request for a recommendation for placement in a therapeutic community indicating that he no authority to do so. (*Id.* at p. 7, ¶¶ 40-42). Rosado alleges that Stanish concluded on this date that he would "not be providing any medical expenses for surgery...." (*Id.* at p. 11, ¶ 89).

He alleges that on or about January 4, 2014, he submitted a sick call request seeking "an alternative program" and Restasis. (*Id.* at p. 7, ¶ 43). He was seen by

---

[1] Based on the chronology of events, this request had to be made in May of 2013, not 2014.

5

Defendant DeBoer who allegedly informed him that there was no record of him seeing Dr. Havrilla and denied his request for Restasis. (*Id.* at p. 7, ¶ 45). He also states that Defendant Stanish "operated as fraud to reverse a professional medical opinion." (*Id.* at p. 8, ¶ 50).

On July 20, 2014, he allegedly submitted a sick call request due to a recurrence of an infection and rash near his right eye due to the corneal graft. (*Id.* at p. 8, ¶ 56). Defendant DeBoer provided him with a generic form of Restasis, which he contends complicated "both the eye and the infection." (*Id.* at p. 8, ¶ 58).

On August 18, 2014, Rosado alleges he was again transported to Dr. Havrilla's office. He alleges the following took place during the appointment:

> 78. However, on August 18, 2014, Plaintiff was brought back to Defendant Habrilla located at (703 Rutter Ave, Kingston, Pa.) advising Mr. Rosado stating quote, "We are here to issue you glasses and ordered by Dr. Stanish."
>
> 79. Mr. Rosado in opposition and swiftly responded to Defendant Habrilla, stating, I sincerely hope you are not wrongfully proscribing [sic] me glasses after rendering on December 20th, 2013, glasses would only impair my vision and glasses cannot be proscribed [sic].
>
> 80. Further, you have strict orders to wrongfully proscribe me glasses to manifestly place me in (TC) program, please note if you decide to do so, I'll place a lien on you, and freeze all your assets.
>
> 81. Dr Habrilla responded stating quote, "What?["] Officer Rose intervened stating quote, "Dude what he trying to say is if you wrongfully proscribe him glasses, he will place a lawsuit against you, trust me I read his record, he no joke."
>
> 82. Dr. Habrilla responded stating quote, "I cannot issue him glasses, it would only impair his ability to see, I am calling Stanish immediately, glasses cannot

be proscribed [sic] I will finish the report, do not bring this inmate here again."

(*Id.*, pp. 10, 11, ¶¶ 78-82). A telephonic conversation then allegedly took place between Stanish and Havrilla during which Rosado asserts they agreed to provide him inadequate medical care and agreed upon a false diagnosis. (*Id.* at p. 11, ¶¶ 80-84). He left Dr. Havrilla's office with an eyeglass prescription for tinted glasses so as to avoid sunlight and irritation, and a recommendation that he receive surgery on both eyes. (*Id.* at p. 11, ¶ 90).

On August 6, 2015, he submitted a sick call request to have his neck examined, which he alleges was not answered for two days. (*Id.* at p. 12, ¶¶ 93, 94). Defendant DeBoer told him there was nothing wrong with him and threatened him for seeking medical attention; a different nurse then evaluated him and prescribed him a ten-day regimen of muscle relaxers and pain relievers. (*Id.* at p. 12, ¶¶ 95-97).

On November 17, 2015, he sought treatment for the recurring rash and pain and Defendant DeBoer told him he had no infection and did not treat his ailment. (*Id.* at p. 13, ¶¶ 100-101). He asserts that the rash went untreated for months. (*Id.* at p. 13, ¶ 101). He was eventually seen by the optometrist. He expected to have the recurring rash and pain addressed. The optometrist informed him that he was there for an eyeglass prescription, not for treatment of an infection. (*Id.* at p. 13, ¶¶ 102-1-4). The infection allegedly spread and Defendant DeBoer continued to inform him that there was no infection and threatened that she would issue him a misconduct. (*Id.* at p. 13, ¶¶ 105, 106).

## C. Discussion

### 1. Medical Negligence Claims Against all Defendants

In Pennsylvania, medical negligence, or medical malpractice, is defined as "the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003) (citing *Hodgson v. Bigelow*, 7 A.2d 338 (Pa. 1939)). The existence of an injury, by itself, does not prove a doctor's negligence. *Mitchell v. Shikora*, 209 A.3d 307, 315 (Pa. 2019) (citations omitted). Rather, under Pennsylvania law, to "establish a cause of action for negligence, the plaintiff must prove the following elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." *See Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005) (citing *Pittsburgh Nat'l Bank v. Perr*, 637 A.2d 334, 336 (Pa. Super. Ct. 1994)); *Brown v. Hahnemann Univ. Hosp.*, 20 F. Supp. 3d 538, 542 (E.D. Pa. 2014); *see also Mitchell*, 209 A.3d at 315.

Defendants seek to dismiss Rosado's medical malpractice claims based on his failure to comply with Pennsylvania's Certificate of Merit ("COM") requirements.[2] In a prior memorandum (Doc. 107) addressing Defendant Stanish and DeBoer's first motion to

---

[2] Defendant Havrilla seeks dismissal of the negligence claim on various other grounds. Because this ground is dispositive of the claim, the Court will not address Havrilla's additional alternative arguments.

dismiss based on a failure to comply with the COM requirements, *inter alia*, the Court noted that, although Rosado filed three documents which he identified as COMs (Docs. 30, 84, 85), none complied with the Pennsylvania Rules of Civil Procedure 1042.3. At that time, based on his *pro se* status, and an indication from various filings that he did not understand the COM requirement (Docs. 84, 85), the Court afforded him the opportunity to file a proper COM and denied Defendants' motion without prejudice to their right to seek dismissal of the negligence claims if Rosado failed to satisfy the COM requirement.

Rosado filed a purported COM on October 8, 2020. (Doc. 114). Defendants promptly filed a motion to dismiss the negligence claims for failure to file a proper COM. (Doc. 115). Likewise, Defendant Havrilla seeks to dismiss the negligence claims for failure to file a proper COM. (Doc. 126, pp. 11-13).

Under Rule 1042.3 of the Pennsylvania Rules of Civil Procedure, a plaintiff seeking to raise medical malpractice claims must file a valid COM. That rule states in pertinent part:

> (a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either []
>
> > (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
> >
> > (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals

9

> for whom this defendant is responsible deviated from an acceptable professional standard, or
>
> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa. R. Civ. P. 1042.3(a). The requirements of Rule 1042.3 are substantive in nature and, therefore, federal courts in Pennsylvania must apply these prerequisites of Pennsylvania law when assessing the merits of a medical malpractice claim. See *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262-65 (3d Cir. 2011); *Iwanejko v. Cohen & Grigsby, P.C.*, 249 F. App'x 938, 944 (3d Cir. 2007). This requirement applies with equal force to counseled complaints and to *pro se* medical malpractice actions brought under state law. See *Hodge v. Dep't of Justice*, 372 F. App'x 264, 267 (3d Cir. 2010) (affirming district court's dismissal of medical negligence claim for failure to file a certificate of merit); *Levi v. Lappin*, No. 07-1839, 2009 WL 1770146, at *1 (M.D. Pa. June 22, 2009).

In his COM, Rosado states that "[e]xpert testimony [is] not necessary to prevail, any lay person can see. However, plaintiff attempted to seek expert testimony, and therefore, submits to (a).(3)." (Doc. 114, p. 1).

Defendants argue that "to satisfy his burden he must provide expert testimony establishing to a reasonable degree of medical certainty (1) the standard of care required from the physicians…; (2) deviation from the standard of care…; and (3) that such deviation constituted the proximate cause of the harm suffered by Rosado." (Doc. 116, p. 11). (citations omitted). They cite to caselaw which holds that competent expert testimony on

the standard of care and causation constitutes "indispensable requirements of establishing a right to recovery." (Doc. 116, p. 12, citing *Hoffman v. Mogil*, 665 A.2d 478, 481 (Pa. Super. 1995); *Toogood*, 824 A.2d at 1145. *See also*, Doc. 126, pp. 11, 12, citing *Liggon-Redding*, 659 F.3d at 265, and *Hakeem v. Salaam*, 260 F. App'x 432, 434 (3d Cir. 2008)). Further, in the absence of such expert testimony, a plaintiff cannot establish a *prima facie* case of medical malpractice which precludes proceeding to trial or offering testimony at some later point in the litigation, absent exceptional circumstances. (Doc. 116, p. 12, citing *Miller v. Sacred Heart Hosp.*, 753 A.2d 829, 833 (2000); *Eaddy v. Hamathy*, 694 A.3d 639, 643 (Pa. Super. 1997). *See also* Doc. 126, p. 11, citing *Liggon-Redding*, 659 F.3d at 265; *Robles v. Casey*, 2012 WL 382986, at *3 n.1 (M.D. Pa. Feb. 6, 2012). Defendants Stanish and DeBoer also point out that the Pennsylvania legislature prohibits anyone not a physician from testifying against a physician on the issue of the standard of care and on causation. (Doc. 116, p. 13, citing 40 P.S. § 1303.512).

To meet the first and second elements of a medical negligence claim, Rosado must establish by expert testimony "the recognized standard of care and that the care or treatment rendered fell below such standard." *Titchnell v. United States*, 681 F.2d 165, 169 (3d Cir. 1982); *Maresca v. Mancall*, 135 Fed. Appx. 529, 531 (3d Cir. 2005); *Welsh v. Bulger*, 698 A.2d 581, 585 (Pa. 1997) ("[A] plaintiff must present expert testimony to establish to a reasonable degree of medical certainty that the defendant's acts deviated from an accepted medical standard, and that such deviation was the proximate cause of the

11

harm suffered."). "Should a plaintiff certify that expert testimony is unnecessary, 'in the absence of exceptional circumstances the attorney is bound by the certification and, subsequently, the trial court shall preclude the plaintiff from presenting testimony by an expert on the questions of standard of care and causation.'" See *Rodriguez v. United States*, No. 3:14-cv-1149, 2016 WL 4480761, at *4 (M.D. Pa. Aug. 23, 2016) (quoting Pa. R. Civ. P. 1042.3(a)(3), aff'd, 695 F. App'x 669 (3d Cir. 2017). See also, Pa. R. Civ. P. 1042.3(a)(3). In short, "the consequence of such a filing is a prohibition against offering expert testimony later in the litigation, absent 'exceptional circumstances.'" See *Liggon-Redding*, 659 F.3d at 265.

This exception is narrow. "The only instance in which expert testimony is not required is when the matter is so simple or the lack of care so obvious as to be within the range of experience and comprehension of non-professional persons." *Hakeem*, 260 F. App'x. at 435 (citing *Hightower–Warren v. Silk*, 548 Pa. 459, 698 A.2d 52, 54 n. 1 (1997)). Significantly, "[i]t is well-settled that reliance on the doctrine of *res ipsa loquitur* in medical negligence cases 'must be carefully limited.' "[3] *Njos v. United States*, 2017 WL 6949812

---

[3]  *Res ipsa loquitur* is a rule of evidence permitting an inference of negligence from the circumstances surrounding the injury. *Quinby v. Plumsteadville Family Practice, Inc.*, 589 Pa. 183, 907 A.2d 1061, 1071 (Pa.2006). The Pennsylvania Supreme Court has adopted *res ipsa loquitur* as articulated in the Restatement (Second) of Torts § 328D. *Id.* (citation omitted). Under § 328D, it may be inferred that the harm suffered was caused by the negligence of the defendant when: (a) the event is the kind which does not ordinarily occur in the absence of negligence; (b) the evidence sufficiently eliminates other possible causes, including the conduct of the plaintiff and third parties; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff. If the court determines that these prerequisites are met, it is for the jury to determine whether an inference of negligence should be drawn. *See Toogood*, 573 Pa. 245, 824 A.2d 1140, 1149–50 (Pa.2003) (plurality) (holding that before *res ipsa loquitur* may be invoked, plaintiffs must meet the three § 328D conditions).

(M.D. Pa. Oct. 17, 2017). Three conditions must be met before the doctrine may be invoked: (a) either a lay person is able to determine as a matter of common knowledge, or an expert testifies, that the result which has occurred does not ordinarily occur in the absence of negligence; (b) the agent or instrumentality causing the harm was within the exclusive control of the defendant; and (c) the evidence offered is sufficient to remove the causation question from the realm of conjecture, but not so substantial that it provides a full and complete explanation of the event. *See Toogood*, 824 A.2d at 1149-50.

We agree with Defendants. A COM that commits Rosado to proceeding without expert testimony is fatal to his medical malpractice claims. Although his filing satisfies the requirements of Rule 1042.3,[4] *see Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011), his claims involve an alleged untreated eye infection that caused a painful rash, which resulted in diminished eyesight and additional injuries to the eye. His injury concerns complex issues relating to the standard of care and causation, which he cannot establish without expert testimony. *Toogood*, 573 Pa. at 264, 824 A.2d at 1151. This is not a case where a licensed medical professional's deviation from the standard of care and that deviation's causation of injury are obvious and within the realm of layperson knowledge, such as, for example, when a surgeon inadvertently leaves a sponge or other

---

[4] "There is no basis in Pennsylvania law that would permit a district court to reject a filing under Rule 1042.3(a)(3) in favor of one filed under Rule 1042.3(a)(1). Pennsylvania law expressly allows a plaintiff to proceed on the basis of a certification that expert testimony will not be required to prove h[is] claim." *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011).

medical material/instrument in a patient's abdominal cavity. *See Jones v. Harrisburg Polyclinic Hospital*, 437 A.2d 1134, 1138 n.11 (Pa. 1981). *See also Preacher v. Correct Care Servs.*, No. 2:19-CV-1207, 2021 WL 862320, at *6 (W.D. Pa. Jan. 29, 2021), *report and recommendation adopted*, No. CV 19-1207, 2021 WL 858501 (W.D. Pa. Mar. 8, 2021), citing *Paige v. Holtzapple,* 2009 WL 2588849, *4 (M.D. Pa. 2009) ("Where the conduct at issue constituted an integral part of rendering medical treatment, and involved diagnosis, care, and treatment by a licensed professional, ... the action is one that is characterized as a professional negligence action requiring expert testimony") (collecting cases). Consequently, he "may not rely upon Rule 1042.3(a)(3) or the doctrine of *res ipsa loquit[u]r* to carry his burden of proof on the issues of negligence and causation that are central to this tort claim." *See Njos,* \2017 WL 6949812. Accordingly, Defendants' motions to dismiss the medical malpractice claims will be granted.[5]

### 2. Eighth Amendment Claim Against Defendant Havrilla

A claim brought pursuant to 42 U.S.C. § 1983 is subject to the same statute of limitations that applies to personal injury tort claims in the state in which such a claim arises. *See Wallace v. Kato,* 549 U.S. 384, 387 (2007); *Kach v. Hose,* 589 F.3d 626, 639 (3d Cir. 2009). Rosado's claim arose in Pennsylvania; thus, the applicable statute of limitations is Pennsylvania's two-year statute of limitations for personal injury actions. 42 PA. CONS.

---

[5] In a "Certificate of Verification" attached to his COM, he adds that he reserves the right to execute expert testimony in the event that his case goes to trial. (Doc. 114, p. 2). However, his election to proceed under Pa. R. Civ. P. 1042.3(a)(3) precludes future reliance on, or introduction of, expert testimony.

STAT. ANN. § 5524(2). The statute of limitations period accrues when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action. *See Garvin v. City of Phila.*, 354 F.3d 215 (3d Cir. 2003); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991).

According to Rosado's complaint, the care rendered by Defendant Havrilla occurred on December 20, 2013, and August 18, 2014. Rosado seems to be invoking Pennsylvania's discovery rule in asserting that he was not aware of his injuries until he underwent an independent medical examination on November 11, 2016, which resulted in his disability claim being granted on September 17, 2017. (Doc. 129, p. 3). Pennsylvania's discovery rule is "an exception to the requirement that a complaining party must file suit within the statutory period." *Communications Network International, Ltd.*, 187 A.3d at 961 (quoting *Meehan v. Archdiocese of Philadelphia*, 870 A.2d 912, 919 (Pa. Super. Ct. 2005)). The discovery rule is applicable where the plaintiff "is reasonably unaware that his or her injury has been caused by another party's conduct." *Gleason v. Borough of Moosic*, 609 Pa. 353, 15 A.3d 479, 484 (2011). If the discovery rule is applicable, the running of the statute of limitations is tolled. *Id.*

> "The discovery rule is designed to 'ameliorate the sometimes-harsh effects of the statute of limitations,' and it is often applied in medical malpractice and latent disease cases in which the plaintiff is unable to discover his or her injury until several years after the tort occurred." *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006) (quoting *Cathcart v. Keene Indus. Insulation*, 471 A.2d 492, 500 (Pa. Super. Ct. 1984)). The rule tolls the accrual of the statute of limitations when the plaintiff is unable, "despite the exercise of due diligence, to know of

15

the injury or its cause." *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983). Under the discovery rule, the statutory period "does not begin to run until 'the plaintiff knows, or reasonably should know, (1) that he has been injured and (2) that his injury has been caused by another party's conduct.' " *Id.* (quoting *Mest*, 449 F.3d at 510). The plaintiff "bears the burden of demonstrating that he exercised reasonable diligence in determining the existence and cause of his injury." *Mest*, 339 F.3d at 411 (citing *Cochran v. GAF Corp.*, 666 A.2d 245, 249 (Pa. 1995)). "To demonstrate reasonable diligence, a plaintiff must 'establish[ ] that he pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protections of their own interests and the interests of others.' " *Id.* (quoting *Cochran*, 666 A.2d at 250).

The Supreme Court of Pennsylvania has clarified that reasonable diligence is not "an absolute standard, but is what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised." *Fine*, 870 A.2d at 858. " '[T]here are [very] few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence.' " *Id.* (alteration in original) (quoting *Crouse v. Cyclops Indus.*, 765 A.2d 606, 611 (Pa. 2000)). "Put another way, [t]he question in any given case is not, what did the plaintiff know of the injury done him? [B]ut, what might he have known, by the use of the means of information within his reach, with the vigilance the law requires of him." *Id.* (quoting *Scranton Gas & Water Co. v. Lackawanna Iron & Coal Co.*, 31 A. 484, 485 (Pa. 1895)). Pennsylvania applies the discovery rule narrowly, placing a heavy burden on plaintiffs invoking the rule. *See Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011). "Where ... reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the [C]ourt determines that the discovery rule does not apply as a matter of law." *Fine*, 870 A.2d at 858-59 (citing *Pocono Int'l*, 468 A.2d at 471).

*Doe v. City of Wilkes-Barre*, No. CV 3:19-938, 2021 WL 1197627, at *2–3 (M.D. Pa. Mar. 30, 2021) quoting *Soutner v. Covidien, LP*, 2018 WL 5312610, at *4 (M.D. Pa. Oct. 26, 2018).

It is clear from the allegations in the Third Amended Complaint that in August 2014,

at the latest, Rosado knew or should have known of Defendant Havrilla's involvement in his alleged injury and its cause. He alleges that in August 2014, Defendant Havrilla falsely diagnosed him and wrongfully prescribed glasses, despite a determination in December 2013, that glasses would only impair his vision. He also alleges that he was present for a telephonic conference between Havrilla and Defendant Stanish during which they allegedly agreed to provide him inadequate medical care and agreed upon a false diagnosis. Further, he alleges that he communicated to Defendant Havrilla that "you have strict orders to wrongfully proscribe me glasses to manifestly place me in (TC) program, please note if you decide to do so, I'll place a lien on you, and freeze all your assets." (Doc. 69, ¶ 80). Allegedly, Officer Rose intervened stating quote, "Dude what he trying to say is if you wrongfully proscribe him glasses, he will place a lawsuit against you, trust me I read his record, he no joke." (*Id*. at 81). He also alleges that in December 2013, Defendant Havrilla reached the same conclusion as two other doctors who treated and performed a corneal graft on his eye in 2005. Despite this conclusion, in August 2014, he went back on his professional opinion. (*Id.* at 85, 86).

It is clear that Rosado has filed to meet his burden of demonstrating that the discovery rule applies. Reasonable minds would not differ in finding that he knew or should have known on the exercise of reasonable diligence of his injury and its cause in August 2014. Consequently the discovery rule does not apply.

The Eighth Amendment claim against Defendant Havrilla accrued, at the latest, in August 2014, and the applicable statute of limitations expired two years later in August 2016. Plaintiff did not initiate this action until July 31, 2017. Hence, the Eighth Amendment claim against Defendant Havrilla is barred by the statute of limitations and subject to dismissal.

## IV. Conclusion

Based on the foregoing discussion, Defendant Havrilla's motion to strike Rosado's "motion to clear any misconception in support files undisputed facts against Dr. Havrilla" will be granted and the motions to dismiss filed by Defendants Stanish and DeBoer and Defendant Havrilla will be granted.

A separate Order shall issue.

Dated: May 28, 2021

Robert D. Mariani
United States District Judge