UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERONIMO FRATICELLI ROSADO, JR, | ) | CIVIL ACTION NO. 3:18-CV-601 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | (ARBUCKLE, M.J.) |
| | ) | |
| JANE DOE LAW LIBRARIAN, *et al.,* | ) | |
| Defendants | ) | |

MEMORANDUM OPINION

## I.   INTRODUCTION

Geronimo Fraticelli Rosado ("Plaintiff") has a significant vision impairment. He has no vision in his left eye. His corrected vision in his right eye is 20/200. In July 2017, Plaintiff initiated this *pro se* civil rights complaint alleging, among other things, that two members of the medical staff at SCI Dallas denied him adequate medical care for his vision impairment, in violation of his Eighth Amendment rights.

Currently pending before the court are the parties' cross-motions for summary judgment (Docs. 155, 158). For the reasons explained in this opinion, Plaintiff's motion for summary judgment (Doc. 155) will be denied in its entirety. The court further finds that Defendants' motion for summary judgment (Doc. 158) will be granted in part and denied in part as follows:

(1)   Defendants' motion for summary judgment will be granted as to Plaintiff's claims that:

(a)   Defendants failed to give Plaintiff's medical records to Dr. Havrilla on December 20, 2013;

(b)     Defendants denied Dr. Havrilla's recommendation that Plaintiff undergo a left eye corneal transplant and right eye cataract surgery;

(c)     Defendants failed to provide any treatment for an eye infection in November 2015; and

(d)     Defendants' refused to provide a prescription for Restasis.

(2)     Defendants' motion for summary judgment will be denied as to Plaintiff's claim that Defendants failed to give Plaintiff his prescription tinted glasses.

## II.     BACKGROUND & PROCEDURAL HISTORY

Plaintiff was incarcerated at SCI Dallas from October 2013 to July 2016.

In July 2017, Plaintiff filed a *pro se* civil rights complaint in the United States District Court for the Western District of Pennsylvania. On March 12, 2018, that complaint was transferred to the Middle District of Pennsylvania. (Doc. 50).

After his case was transferred, Plaintiff made several attempts to amend his complaint. (Doc. 64). On August 26, 2018, Plaintiff filed a proposed amended complaint. (Doc. 66). On October 29, 2019, United States District Judge James M. Munley issued an order accepting that complaint, but dismissing several claims as follows:

1.     Claims One, Three and Four of the proposed amended complaint (Doc. 66) and the portions of Claim Seven, pertaining ONLY to Defendants Wetzel, [Havrilla], Mahally, Loretta and Stanish, are ACCEPTED for filing.

2.     Claims Two, Five and Six and the positions of Claim Seven pertaining to Defendants Mooney and Doe are STRICKEN,

without prejudice, for failure to comply with Rule 20 of the Federal Rules of Civil Procedure.

3.    The Clerk of Court is directed to re-file Document 66 as Plaintiff's Amended Complaint an either redact Claims two, Five and Six, and their attendant facts, and the portions of Claim Seven referenced above, or note on the document that those claims and their attendant facts are stricken.

4.    The Clerk of Court is further directed to TERMINATE all Defendants with the exception of Wetzel, Mahally, Loretta and Stanish, and to ADD Dr. [Havrilla] as a named Defendant.

5.    Defendants Wetzel, Mahally and Stanish shall respond to the amended complaint in accordance with the Federal Rules of Civil Procedure.

(Doc. 68).

In accordance with that order, Plaintiff's proposed amended complaint (Doc. 66) was docketed as his amended complaint (Doc. 69) (hereinafter "complaint").

On September 18, 2020, the court dismissed all claims against Defendants Wetzel, and Mahally. (Docs. 107, 108). On May 8, 2021, the court dismissed all claims against Defendant Havrilla. (Docs. 133, 134).

Defendant Stanish (a physician who provides medical care to inmates at SCI Dallas), and Defendant DeBoer (a CRNP who provides medical are to inmates at SCI Dallas) are the only remaining Defendants.

The only remaining claims pending against Defendants Stanish and DeBoer arise under the Eighth Amendment for the denial of adequate medical care in prison. (*See* Docs, 133, 134) (dismissing all other claims against Defendants Stanish and

DeBoer). The complaint is construed as asserting the following Eighth Amendment claims:

(1)    Failure to transmit Plaintiff's medical records to outside specialist, Dr. Havrilla, before Plaintiff's appointment on December 20, 2013;

(2)    Failure to accept Dr. Havrilla's recommendation that Plaintiff required a left eye corneal transplant and right eye cataract surgery;

(3)    Failure to provide any treatment for an eye infection in November 2015;

(4)    Failure to issue a prescription for Restasis eye drops; and

(5)    Failure to give Plaintiff the tinted prescription glasses that were ordered.

As relief, Plaintiff requests money damages. (Doc. 69, pp. 26-27).

In October 2013, Plaintiff was transferred from SCI Camp Hill to SCI Dallas for a sentence of one to three years. On intake, medical staff noted that Plaintiff had no vision in his left eye, and had limited vision in his right eye. They also noted that Plaintiff had a history of right eye corneal implant. Plaintiff's eye condition was evaluated twice during his first two months at SCI Dallas. Once on intake, and a second time on November 5, 2013 by an on-site optometrist.

On December 20, 2013, Plaintiff was transported to an off-site optometrist (Dr. Havrilla). The purpose for that visit and the plan of care that were discussed are disputed. Plaintiff alleges Dr. Havrilla recommended a left eye corneal transplant and right eye cataract surgery. Defendants contend Dr. Havrilla recommended a

contact lens for Plaintiff's right eye. Defendants' account is confirmed in Plaintiff's treatment record.

Plaintiff alleges that he continued to seek care for his worsening vision, which Defendants allegedly refused to provide. Defendants contend that Plaintiff received appropriate care, Plaintiff requested prescriptions (Restasis eyedrops) and treatment (eye surgeries) that were not medically indicated, and Defendants ordered custom glasses for Plaintiff when he refused to wear the recommended contact lens. Like Plaintiff's characterization of Dr. Havrilla's treatment recommendation, Plaintiff's account is not corroborated  by his medical records.

In early January 2014, Plaintiff alleges he submitted a sick call request seeking an "alternative program" and a prescription for Restasis. (Doc. 69, ¶ 43). Defendant DeBoer refused Plaintiff's request for Restasis. (Doc. 69, ¶¶ 43-45).

In July 2014, Plaintiff claims he developed an eye infection because Defendant DeBoer prescribed generic artificial tears instead of Restasis. (Doc. 69, ¶¶ 56-60).

In August 2014, Plaintiff alleges Dr. Havrilla examined him again and recommended surgery for a second time. (Doc. 69, ¶¶ 78-79). No surgical recommendation appears in the treatment record. Plaintiff alleges that Defendant Stanish directed Dr. Havrilla to prescribe tinted prescription glasses which Plaintiff never received. (Doc. 69, ¶¶ 89-90). The record confirms that Dr. Havrilla did

prescribe glasses, and that Defendants special-ordered those glasses. *Id.* Nothing in the record suggests that the glasses ever given to Plaintiff.

On November 17, 2015, Plaintiff claims he sought treatment for a rash in and around his right eye and pain. (Doc. 69, ¶ 99). Defendant DeBoer told him there was no infection. (Doc. 69, ¶ 100). Plaintiff alleges that his infection went untreated for five months. (Doc. 69 ¶ 101). With an eye infection still raging, the SCI Dallas optometrist examined Plaintiff, refused to treat Plaintiff's infection, and was "ordered" (by one or both Defendants) to prescribe glasses despite knowing it would be ineffective treatment. (Doc. 69, ¶ 102). Plaintiff alleges he submitted multiple sick call requests to address his infection. (Doc. 69, ¶ 106). During each sick call, Defendant DeBoer said there was no infection and threatened to issue a misconduct if Plaintiff continued to seek treatment. *Id.* The medical records show, however, that Plaintiff was examined at least seven times for this issue over a period of several months. Initially, the clinicians did not see evidence of an eye infection, only a skin rash. As the rash got worse, it was diagnosed as an eye infection. A lab test was done to confirm the infection, an antibiotic was prescribed, and Plaintiff was routinely examined to monitor the status of his condition.

Presently pending before the court are Plaintiff's second motion for summary judgment (Doc. 155) and Defendants' second motion for summary judgment (Doc. 158).

On October 22, 2021, Plaintiff filed his second motion for summary judgment. (Doc. 155).[1] Along with his motion, Plaintiff filed a brief in support (Doc. 156), statement of facts (Doc. 157), and exhibits (Docs. 156-1 through 156-13).

On November 4, 2021, Defendants filed a brief in opposition (Doc. 162), a response to Plaintiff's statement of facts (Docs. 163), and an objection to Plaintiff's exhibits (Doc. 165).

On October 22, 2021, Defendants filed their second motion for summary judgment. (Doc. 158).[2] Along with their motion, Defendants filed a brief in support (Doc. 159), statement of facts (Doc. 160), and exhibits (Doc. 161 *et seq.*).

On November 10, 2021, Plaintiff filed a brief in opposition (Doc. 167), a response to Defendants' statement of facts (Doc. 168), and an objection to Defendants' exhibits (Doc. 169).

On November 11, 2021, Defendants filed a reply. (Doc. 170).

---

[1] Plaintiff's first motion for summary judgment was filed without supporting exhibits. One month later, Plaintiff filed his second motion for summary judgment to replace his first, incomplete, motion. Therefore, Plaintiff's first motion for summary judgment was deemed moot.

[2] Defendants' first motion for summary judgment was deemed withdrawn. They filed the motion on September 24, 2021, without a brief, statement of facts or exhibits. (Doc. 141). Four days later, the dispositive motions deadline was extended. After fourteen days, no brief was received. The court deemed the motion withdrawn without prejudice to refile the motion before the expiration of the new dispositive motions deadline.

### III.   LEGAL STANDARDS

#### A.   CROSS-MOTIONS FOR SUMMARY JUDGMENT—STANDARD OF REVIEW

The parties have filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This rule explains:

> A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).

Through summary adjudication, a court is empowered to dispose of those claims that do not present "a *genuine* dispute as to any *material* fact," Fed. R. Civ. P. 56(a) (emphasis added), and for which trial would be "an empty and unnecessary formality." *Univac Dental Co. v. Dentsply Int'l, Inc.*, 702 F.Supp.2d 465, 468 (M.D. Pa. 2010). A fact is *material* if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Haybarger v. Laurence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 412 (3d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). For a dispute to be *genuine*, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (quoting *Anderson,* 477 U.S. at 248-49).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. *Anderson*, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. *Id.* at 252; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 794 (3d Cir. 2007).

A party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that there is a genuine

dispute of material fact. "[O]nly evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." *Countryside Oil Co., Inc. v. Travelers Ins. Co.*, 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." *Thimons v. PNC Bank, NA*, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." *Fireman's Ins. Co. of Newark New Jersey v. DuFresne*, 676 F.2d 965, 968 (3d Cir. 1982); *see Sunshine Books, Ltd. v. Temple University*, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." *Lockhart v. Hoenstine*, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, an adverse party "cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985) (citing *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, when ruling on a motion for summary judgment, it is not the province of the court to weigh evidence or assess credibility. The court must view the evidence presented in the light most favorable to the non-moving party, *Anderson*, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party. *Big Apple BMW, Inc. v. BMW of North America, Inc*., 974 F.2d 1358,

1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. *Id.* Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the non-movant on the evidence presented. *Anderson*, 477 U.S. at 252; *see also Big Apple BMW*, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

*Id.* In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In this case, the court is called upon to adjudicate cross-motions for summary judgment. "The standard for addressing cross-motions for summary judgment remains the same as if there were only one motion filed." *Beneficial Mut. Sav. Bank v. Stewart Title Guar. Co.*, 36 F. Supp.3d 537, 544 (E.D. Pa. 2014) (citing *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008)). "When confronted with cross-motions for summary judgment the 'court must rule on each party's motion on an

individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Beneficial Mut. Sac. Bank*, 36 F. Supp.3d at 544 (quoting *Schlegel v. Life Ins. Co. of N. Am.*, F.Supp.2d 612, 615 n.1 (E.D. Pa. 2003)).

## B.   CLAIMS UNDER 42 U.S.C. § 1983

Plaintiff's Eighth Amendment claim is brought under 42 U.S.C. § 1983. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005). "It is well settled that § 1983 does not confer any substantive rights, but merely 'provides a method for vindicating federal rights elsewhere conferred.'" *Williams v. Pennsylvania Human Relations Comm'n*, 870 F.3d 294, 297 (3d Cir. 2017) (quoting *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 104 (3d Cir. 2014)). To establish a claim under § 1983, Plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

**C.    EIGHTH AMENDMENT DENIAL/DELAY OF MEDICAL TREATMENT**

Several overarching constitutional considerations govern the court's analysis of Eighth Amendment claims arising from the denial of adequate medical care in prison.

First, to prevail on such a claim he must plead, and ultimately prove, facts that:

> [M]eet two requirements: (1) "the deprivation alleged must be objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994) (quotations marks and citations omitted). In prison condition cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* "Deliberate indifference" is a subjective standard under Farmer—the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

*Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To establish a violation of the constitutional right to adequate medical care in a prison setting, a plaintiff is required to point to evidence that demonstrates both (1) a serious medical need, and (2) acts or omissions by prison officials, in this case prison medical staff, that suggest deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference to a serious medical need involves the "unnecessary

and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or by "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

In addition to these stringent standards for proving an Eighth Amendment denial of medical care claim, the courts analysis of plaintiffs' claims is also guided by well-settled examples of conduct involving denial of medical care that does not rise to the level of a constitutional violation.

First, it is  clear that the mere misdiagnosis of a condition or medical need, or even negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. *Estelle*, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. *Clark v. Doe*, No. 99-5616, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000) ("[C]ourts have consistently rejected Eighth Amendment

claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. *See e.g., Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.'); *Gindraw v. Dendler*, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

Applying this standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received, *see e.g.*, *Ham v. Greer*, 269 F. App'x 149 (3d Cir. 2008); *James v. Dep't of Corrections*, 230 F. App'x 195 (3d. Cir. 2007); *Gillespie v. Hogan*, 182 F. App'x 103 (3d Cir. 2006); *Bronson v. White*, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); *Gindraw*, 967 F.Supp. 833, particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in *Estelle*[, 429 U.S. at 104], and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that

claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

*James*, 230 F. App'x at 197-198 (citations omitted).

Second, it is well-settled that an inmate's dissatisfaction or disagreement with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. *See Taylor v. Norris*, 36 F. App'x 228, 229 (8th Cir. 2002) (deliberate indifference claim failed when it boiled down to a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); *Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1024-35 (7th Cir. 1996) (inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); *Sherrer v. Stephen*, 50 F.3d 496, 497 (8th Cir. 1994) (inmate's "desire for a replacement joint instead of fusion surgery is merely a disagreement with the course of medical treatment and does not state a constitutional claim"); *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (prison provided escalating level of treatment for inmates' ailments over time, and inmate's disagreement with course of medical treatment was insufficient basis for Eighth Amendment violation); *Czajka v. Caspari*, 995 F.2d 870, 871 (8th Cir. 1993)

(inmate's mere disagreement with doctor's informed decision to delay surgery does not establish Eighth Amendment claim); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (inmate failed to prove deliberate indifference where his complaints represented nothing more than mere disagreement with course of his medical treatment); *Lair v. Oglesby*, 859 F.2d 605, 606 (8th Cir. 1988) (disagreement about whether doctor should have prescribed medication does not result in constitutional violation); *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985) (inmate failed to state facts indicating doctor deliberately disregarded his medical problem; inmate's disagreement as to proper medical treatment does not give rise to Eighth Amendment violation). Therefore, where a dispute in essence entails no more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw*, 967 F.Supp. at 836 (citations omitted).

## IV.      DISCUSSION

### A.      THE PARTIES' STATEMENTS OF FACT & RESPONSES

As is customary, each party submitted a statement of material fact to support their motion for summary judgment. In each statement, the parties cited to evidence that supports most of the facts they contend are undisputed.

The parties' responses to each other's statements of material facts are less routine. Rather than rebut each other's statements with the same evidence cited in support of their own motions for summary judgment, each party attempts to demonstrate that there is a genuine issue to every fact their opponent put forth based on a legal challenge. Defendants challenge the "genuineness "of any factual dispute created by a self-serving affidavit. Plaintiff challenges the admissibility of Defendants' evidence.

In his statement of facts, Plaintiff relies almost exclusively on his verified complaint as an affidavit in support of each fact. In response, Defendants suggest that because Plaintiff's statements are self-serving and are blatantly contradicted by the medical records, the dispute of fact is not genuine. I am persuaded by Defendants' position.

Plaintiff has filed a verified complaint in this action. (Doc. 69). Unlike a complaint that is not signed under penalty of perjury, "[a] verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge," *Boomer v. Lewis*, No. 3:06-CV-0850, 2009 WL 2900778, at *14 (M.D. Pa. Sept. 9, 2009), *aff'd,* 541 F. App'x 186 (3d Cir. 2013). Even considering Plaintiff's complaint as an affidavit, these allegations are insufficient to show a genuine dispute of fact because the sworn statements are blatantly contradicted by Plaintiff's medical

records. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment"); *Scott v. Harris*, 500 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Coverdale v. Conley*, No. 1:19-CV-920, 2021 WL 5003429, at *5 (S.D. Ohio Oct. 27, 2021) (finding a plaintiff's testimony that he laid in agony without treatment was insufficient to create a genuine issue of fact where contemporaneous medical chart notes refute that account).

In support of their own motion, Defendants provided Plaintiff's treatment records from SCI Dallas. In virtually all regards, these medical records blatantly contradict the allegations in Plaintiff's verified complaint. Therefore, to the extent these medical records contradict the facts set forth in Plaintiff's statement of material facts, the court is not required to adopt Plaintiff's version of the facts for purposes of resolving his motion for summary judgment.

In their statement of material facts, Defendants rely heavily on Plaintiff's medical records. In his response, Plaintiff challenges the admissibility of those medical records. This challenge, however, is entirely unpersuasive.

Plaintiff is correct that "[f]acts supporting summary judgment must be capable of being presented in a form that would be admissible in evidence." *Nichols v. Smock,* No. 22-1092, 2022 WL 1553000, n. 2 (3d Cir. May 17, 2022) (quoting *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 603 (3d Cir. 2020)). These records are, however, capable of being presented in a form that would be admissible in evidence. *Id.* (finding that medical records submitted by the department of corrections in support of a motion for summary judgment were capable of being presented in a form that would be admissible evidence). Because Plaintiff's legal challenge to the admissibility of these medical records fails, and Plaintiff has not cited contradictory evidence, Defendants' statement of facts should be deemed admitted. *See* LR 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party.").

**B.    EIGHTH AMENDMENT CLAIM: FAILURE TO SEND PLAINTIFF'S RECORDS TO DR. HAVRILLA IN DECEMBER 2013**

Plaintiff alleges, when he was sent to Dr. Havrilla (an outside specialist) for evaluation, Defendants Stanish and DeBoer deliberately withheld Plaintiff's prior examination records from Dr. Havrilla. (Doc. 69, ¶ 36). As a result of this failure, Plaintiff alleges that his care was delayed.

Plaintiff and Defendants both request summary judgment.

In his statement of facts, Plaintiff asserts that on December 20, 2013, Defendants Stanish and DeBoer sent him to Dr. Havrilla's office for medical care but did not send Plaintiff's medical records. (Doc. 157, ¶ 4). This fact, even if taken as true, does not entitle Plaintiff to summary judgment. The failure to send these records, without more, does not amount to deliberate indifference. Plaintiff has cited no evidence that the failure to send these records resulted in a delay of care. Plaintiff's motion for summary judgment will be denied.

To support their own motion, Defendants rely on Dr. Havrilla's treatment records. These records show that Plaintiff gave Dr. Havrilla the necessary information about his medical history, Dr. Havrilla performed a full examination of Plaintiff's right eye, and Dr. Havrilla was able to make a treatment recommendation at the conclusion of that examination. When Dr. Havrilla examined Plaintiff for a second time in August 2014, Dr. Havrilla made the same treatment recommendation. Based on these facts, Plaintiff's treatment was not delayed. Accordingly, Defendants' motion for summary judgment should be granted

C. **EIGHTH AMENDMENT CLAIM: DENIAL OR DELAY OF LEFT EYE CORNEAL GRAFT & RIGHT EYE CATARACT SURGERY**

Plaintiff alleges that in December 2013 and August 2014, Dr. Havrilla recommended that Plaintiff undergo a left corneal graft and right cataract surgery, and that Defendants Stanish and DeBoer refused to approve that procedure. (Doc. 69, ¶¶ 39-42).

Plaintiff and Defendant both request summary judgment.

In support of his own motion, Plaintiff relies entirely on the allegations set forth in his complaint. These allegations, however, are blatantly contradicted by Dr. Havrilla's examination records. Defendants have provided copies of each treatment record. (Doc. 161-3). In the December 2013 record, Dr. Havrilla wrote:

> Patient offered CL fit for improved acuity OD, patient refused CL due to previous complications with CL wear, patient was offered eyeglass correction stated prev optometrist stated glasses would not help improve vision, will return to SCI Dallas to consider other options for vision improvement. Return here prn.

(Doc. 161-3, p. 4).

In the August 2014 treatment note, Dr. Havrilla wrote:

> Pt declines CL fit, prefers plano gradient EG tint due to light sensitivity, will monitor for changes with keratoconus future visits

(Doc. 161-3, p. 9). There is no evidence Dr. Havrilla recommended surgery, and no evidence that Defendants ignored that recommendation. Plaintiff's allegations that a recommendation was made and ignored are entirely self-serving and contradicted by his medical records, thus the court may disregard them. Accepting the factual narrative supported in Plaintiff's medical records, there is no evidence that Defendants were deliberately indifferent.

Plaintiff's motion for summary judgment will be denied. For the same reasons, Defendants' motion for summary judgment on this issue will be granted.

### D.    EIGHTH AMENDMENT CLAIM: FAILURE TO PROVIDE TREATMENT FOR EYE INFECTION IN NOVEMBER 2015

Plaintiff alleges that he developed an eye infection in November 2015, which went untreated for five months because Defendants refused to provide care. (Doc. 69, ¶¶ 99, 101).

Plaintiff and Defendants both request that summary judgment be issued.

Plaintiff's account that he received no care, however, is blatantly contradicted by his medical records. These records show that Plaintiff was examined and treated for this issue on November 17, 2015 (Doc. 161-2, p. 21) (examining Plaintiff and referring him to eye specialist), December 22, 2015 (Doc. 161-2, pp. 5, 20) (examined by eye specialist who noted there was no eye infection), January 6, 2016 (Doc. 161-2, p. 18) (examined with complaints of eye rash, diagnosed with eye infection, the record suggest treatment was ordered but does not specify what that treatment was), January 13, 2016 (Doc. 161-2, pp. 3, 19) (examined during follow-up visit, recommended Plaintiff continue the same treatment plan, and took a culture from the rash), January 20, 2016 (Doc. 161-2, p. 3) (the culture was sent to the lab), January 22, 2016 (Doc. 161-2, pp. 3, 19) (culture was reviewed, and Plaintiff was directed to "continue" antibiotics until rash resolved), January 28, 2016  (Doc. 161-2, p. 7) (during a follow-up examination Plaintiff's rash appeared worse and he was referred for a dermatology consult), February 4, 2016 (Doc. 161-2, p. 7) (during a

follow-up examination Plaintiff rash was improved), February 17 2016 (Doc. 161-2, p. 7) (Plaintiff did not show up for sick call).

Once again, Plaintiff's uncorroborated self-serving allegation that he received no care in his verified complaint is clearly contradicted by his medical records, and the court may disregard this allegation. The records demonstrate that Plaintiff was examined multiple times and was given medication to treat his infection. Although the diagnosis may have been negligently delayed, there is no evidence that Defendants knew Plaintiff had an infection and refused him treatment. There is no evidence that Defendants were deliberately indifferent. Plaintiff is not entitled to summary judgment. For the same reasons, Defendants' motion for summary judgment will be granted on this issue.

### E. EIGHTH AMENDMENT CLAIM: DENIAL OF RESTASIS EYEDROPS

In his complaint, Plaintiff alleges that Defendants denied Plaintiff's request for  prescription (Restasis) eye drops, and that the denial of his request violates the Eighth Amendment.

Plaintiff and Defendants both request that summary judgment be issued.

Although Plaintiff mentions being denied a prescription for Restasis in his statement of facts (Doc. 157 ¶¶ 7, 16), he does not cite to a corresponding portion of his complaint. He does, however, cite to a grievance where he requests Restasis. (Doc. 157-11, p. 2). Even if the court were to consider this fact undisputed, the mere

fact that Plaintiff requested and was denied Restasis is not enough to demonstrate that Defendants were deliberately indifferent to Plaintiff's medical needs. There is no evidence that this prescription was medically necessary. Plaintiff's suggestion that it was is blatantly contradicted by records from multiple providers (including a specialist) who determined that the requested prescription was not medically indicated. (Doc. 160, ¶¶ 17, 20, 21, 57, 60, 61, 93, 94, 95). Accordingly, Plaintiff's motion for summary judgment will be denied. For the same reasons, Defendants' motion for summary judgment will be granted on this issue.

### F.   EIGHTH AMENDMENT CLAIM: DENIAL OF GLASSES

Plaintiff alleges that he agreed to wear glasses, was prescribed glasses, and Defendants Stanish and DeBoer refused to give him the prescribed glasses. (Doc. 69, ¶¶ 90-91).

Plaintiff and Defendants both request summary judgment be issued.

Plaintiff, relying on his complaint, contends that he was prescribed glasses, and he never received them. (Doc. 157, ¶ 11). He also cites to a facility manager's response to a grievance that states, "I spoke to the Medical department and confirmed a new pair of tinted sunglasses have been ordered to help reduce the sun and light irritation. Medical will inform you when your new glasses arrive." (Doc. 157-11, p. 15).

Defendants admit that, on August 18, 2014,  Dr. Havrilla prescribed glasses. (Doc. 160, ¶ 27). Defendant Stanish approved the special order for eyeglasses and requested glasses be fabricated to Dr. Havrilla's specifications the same day. (Doc. 160, ¶¶ 29-30). In July 2016 Plaintiff was released from prison. (Doc. 160, ¶ 48). Defendants provided no evidence to rebut Plaintiff's contention that he never received his glasses. Because it is *not* contradicted by any medical record or other evidence, there is a genuine dispute about whether Plaintiff was given the glasses he was prescribed. Given is vision impairment this failure to provide the prescribed glasses cannot be deemed *de minimis*. Therefore, both motions for summary judgment will be denied.

## V.      CONCLUSION

For the reasons explained in this opinion, Plaintiff's motion for summary judgment (Doc. 155) will be denied in its entirety. The court further finds that Defendants' motion for summary judgment (Doc. 158) will be granted in part and denied in part as follows:

(1)     Defendants' motion for summary judgment will be granted as to Plaintiff's claims that:

(a)     Defendants failed to give Plaintiff's medical records to Dr. Havrilla on December 20, 2013;

(b)     Defendants denied Dr. Havrilla's recommendation that Plaintiff undergo a left eye corneal transplant and right eye cataract surgery;

    (c)    Defendants failed to provide any treatment for an eye infection in November 2015; and

    (d)    Defendants' refused to provide a prescription for Restasis.

(2)    Defendants' motion for summary judgment will be denied as to Plaintiff's claim that Defendants failed to give Plaintiff his prescription tinted glasses.

Date: September 30, 2022        BY THE COURT

                                            *s/William I. Arbuckle*
                                            William I. Arbuckle
                                          U.S. Magistrate Judge